No. 81-250

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

CURTIS CLEVELAND,

        Claimant and Respondent,

    -vs-

CYPRUS INDUSTRIAL MINERALS,

        and

FARMERS INSURANCE GROUP,

        Defendants and Appellants.

---

Appeal from:  Workers' Compensation Court, The Honorable William
E. Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Lyman H. Bennett, III, Bozeman, Montana

    For Respondent:

        Landoe, Brown, Planalp, Kommers & Lineberger,
Bozeman, Montana

---

Submitted on Briefs:  September 11, 1981

Decided: DEC 1 - 1981

Filed: DEC 1 - 1981

_Thomas J. Kearney_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Employer, Cyprus Industrial Materials, appeals from a judgment in Workers' Compensation Court awarding claimant permanent partial disability benefits for an injury amounting to a 100 percent loss of use of his arm at or near the shoulder.

The sole issue on appeal is whether there is sufficient evidence to support the award.

We affirm the Workers' Compensation Court.

Claimant is a man in his late thirties with a high school education, who had been employed by Cyprus Industrial Materials for fifteen years and had worked his way up to the position of boilerman at the time of the accident. He severely injured his left arm in a fall onto a catwalk on February 20, 1977. His employer was enrolled at the time of claimant's injury under Compensation Plan II of the Workers' Compensation Act. The parties agreed that the injury arose out of and in the course of claimant's employment. The defendant accepted liability and paid claimant the appropriate amount for temporary total disability through July 24, 1979, after which defendant has paid claimant bi-weekly benefits for a permanent partial disability. On July 24, 1977, defendant paid claimant $2,000 as a lump sum payment to be credited against future benefits arising from a permanent partial disability rating.

Claimant has suffered recurrent pain in his arm since the accident. He has been treated by several physicians and has traveled to Seattle four times for diagnosis and treatment at a pain clinic there. He has been supplied with electric transcutaneous nerve stimulators (TNS), which help relieve

the pain in his arm. Claimant is purchasing a truck, attempting to rehabilitate himself, but is not able to work regularly because any prolonged activity causes him severe, debilitating pain in his left arm.

A dispute arose between claimant and defendant about the extent of claimant's disability. The parties agreed that the disability is permanent, but defendant alleged that claimant's arm is not 100% disabled and claimant is only entitled to disability benefits equal to a percentage of the amount claimed. On February 8, 1980, claimant filed a petition for a hearing with the Workers' Compensation Court. A hearing was held on July 22, 1980, and findings of fact, conclusions of law and judgment were entered for the claimant on March 4, 1981. The Workers' Compensation Court found that claimant was "entitled to permanent partial disability benefits equal to total or 100% loss of use of his arm at or near the shoulder." On August 5, 1980, in a separate order, the court ordered a lump sum advance of $6,700 to be credited toward benefits to which claimant is entitled. Defendant's petition for rehearing was denied and defendant appeals to this Court.

Defendant maintains that there was insufficient evidence before the Workers' Compensation Court to support its award, arguing that, without a showing that there has been a total loss of usage of the injured arm, the benefits to which claimant is entitled should be proportionately reduced. Defendant urges that, if after review of the record, this Court concludes that the evidence supports a finding of only partial loss of use of his arm by the claimant, this Court should require a proportionate reduction of benefits due claimant.

Defendant relies upon medical evidence supplied by an orthopedic physician from Bozeman, who estimated an impairment to the whole man of 40-50%, and a neurosurgeon from Billings, who reported that impairment of the extremity was approximately 40%, equaling a 24% impairment of the whole man. Defendant also relied upon claimant's own testimony that claimant was capable of driving a truck and using his left arm to some extent on "good days," four or five days a week. Defendant refers to the testimony of claimant's wife that claimant has "some usage" of his left arm. Finally, defendant refers to the Workers' Compensation Court's findings of fact No. 11 and No. 12 which mention claimant's extremely limited and painful use of his arm. These findings, together with the medical reports and testimony, according to defendant, are proof that claimant is capable of using his arm, does use it, and is therefore not suffering from total loss of use of his arm. Defendant argues that this Court should find that claimant is not entitled to benefits calculated on the basis of total loss of his left arm, but only to benefits calculated on a 40% loss of use of his arm.

We cannot agree. Defendant has not considered the debilitating effect of the pain suffered by the claimant when he is active; nor has defendant considered that the "good days" are not necessarily days in which claimant is free from pain and capable of doing the work a sound man could do. The fact that claimant is capable of using his arm to some extent does not automatically mean he is not entitled to benefits equal to those granted for 100% loss of the use of an arm. Nor is the testimony of the physicians a necessary yardstick for determining the extent of claimant's

-4-

disability.

This Court has repeatedly stated that medical impairment ratings alone are not conclusive proof of a particular degree of disability:

> "'Many factors in addition to medical impairment ratings may be properly considered by the court in determining a claimant's disability. For this reason, impairment ratings do not conclusively establish limits on compensation awards in all cases; rather, such medical impairment ratings by physicians are simply expert opinion evidence constituting but one item of evidence to be considered along with other evidence presented.' Ramsey v. Duncan (1977), Mont., 571 P.2d 384, 385, 34 St.Rep. 1277.

> "Here, the Workers' Compensation Court considered this rating along with the other medical evidence and claimant's testimony about his pain and inability to do the same kind of work since the injury, and found claimant's testimony more weighty and credible than the impairment rating." Jensen v. Zook Bros. Const. Co. (1978), 178 Mont. 59, 64, 582 P.2d 1191, 1194.

In determining claimant's degree of disability, another factor must be considered, and that is pain. Robins v. Anaconda Aluminum Co. (1978), 175 Mont. 514, 521, 575 P.2d 67, 71. Furthermore, this Court has upheld the award of permanent and even total disability benefits when the injury is grievous or the pain severe, regardless of the fact that a claimant has been able to do some work. Thus, in Jensen v. Zook Bros. Const. Co., 178 Mont. at 62-63, 582 P.2d at 1193:

> "We hold that this evidence is sufficient to support the finding of the Workers' Compensation Court that claimant is permanently and totally disabled despite the fact that he can and has done various odd jobs. . .

> "'. . . a man with a stiffened arm or damaged back or badly weakened eye will presumably have a harder time doing his work well and meeting the competition of young and healthy men. When a man stands before the Workers' Compensation Court with proven permanent

physical injuries, for which the exclusive
remedy clause has abolished all possibility
of common-law damages, it is not justifiable
to tell him he has undergone no impairment
of earning capacity, solely on the strength
of current pay checks.' Fermo v. Superline
Products (1978), Mont., 574 P.2d 251, 253,
35 St.Rep. 22.

"Because claimant can perform a few odd jobs
for short periods of time does not preclude
a finding that claimant is totally and per-
manently disabled. This is especially true
where, as here, the evidence shows that the
claimant must work with a substantial degree
of pain.

"Where there is evidence of continuing pain
from the injury, we have stated the rule:

"'The evidence shows that . . . claimant
cannot work without pain and he cannot endure
the pain to work. This constitutes substan-
tial evidence supporting a finding of total
permanent disability.' Robins v. Anaconda
Aluminum Co. (1978), Mont., 575 P.2d 67, 72,
35 St.Rep. 213.

"Here, claimant testified that he was suffer-
ing from pain; that he could endure the pain
in his hand when he was not using it; but
that when he used it, the pain increased and
went up his arm. To do any job, claimant
would have to use his hand and would be in
pain. The evidence shows that he cannot work
without pain and he cannot endure the pain
to work." (Emphasis added.)

Claimant has testified that he suffers from substantial

pain, which becomes disabling when he is active for any

length of time. He has been informed that his condition is

permanent and could even deteriorate. When he is active

even the TNS's fail to alleviate his pain, although claimant

usually wears four of them and carries a battery pack to run

them. Claimant also testified that he cannot hold a steady

job because, when the pain in his arm is severe, he must

take hours, even days, off, doing nothing until the pain

subsides sufficiently that he is capable of working again.

It is well settled in Montana that there is no

abuse of discretion in the Workers' Compensation Court's

considering the contents of medical reports contained in the case file before the court. Stevens v. Glacier General Assurance Co. (1978), 176 Mont. 61, 66, 575 P.2d 1326, 1329; Bond v. St. Regis Paper Co. (1977), 174 Mont. 417, 420, 571 P.2d 372, 374. The medical reports contained in this case file include physicians' statements that the claimant's pain is "persistent," "constant," and not likely to respond to normal therapy; that claimant can scarcely go an hour without the TNS before experiencing severe pain, even on "good days;" and that the strength in his left arm is a fraction of that in the other arm. The reports further state that, without activity, the patient is in pain once or twice a day for three to four hours; that claimant must keep the arm away from sunlight and heat or extreme cold, and that the TNS is ineffective in controlling the pain when claimant is active. The reports refer to claimant as indicating that the pain is at a "level which leaves him unable to work and that he consequently spends his days doing chores around the home that are possible using one hand only."

The Workers' Compensation Court judge had the medical reports before him, as well as the testimony of claimant and his wife. The standard of review in Workers' Compensation cases is well settled in Montana:

> ". . .[T]his Court has consistently held the test of sufficiency of the evidence to be whether there is substantial evidence to support the court's findings of fact. See Stamatis v. Bechtel Power Co. (1979), Mont., 601 P.2d 403, 36 St.Rep. 1866; Head v. Larson (1979), Mont., 592 P.2d 507, 36 St.Rep. 571; Strandberg v. Reber Company (1978), Mont., 587 P.2d 18, 35 St.Rep. 1742; Jensen v. Zook Brothers Construction Company (1978), Mont., 582 P.2d 1191, 35 St.Rep. 1066. In Stamatis and Jensen, this Court further held that where the findings are based on conflicting evidence, this Court's function on review is confined to

> determining whether there is substantial evidence to support the findings and not to determine whether there is sufficient evidence to support contrary findings." Little v. Structural Systems (1980), ____ Mont. ____, 614 P.2d 516, 518-519, 37 St.Rep. 1187, 1189.

We do find substantial evidence to support the findings and conclusions of the Workers' Compensation Court in this case. Under the standards of review articulated above, we decline to disturb the determination of that court.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-